UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
M.G., B.Z., J.L., and J.M., on behalf of
themselves and all others similarly situated,

                        Plaintiffs,                    24-cv-4051 (PKC)

            -against-                           OPINION AND ORDER

DARRYL C. TOWNS in his official capacity as
the Chairperson of the Board of Parole, and
DANIEL F. MARTUSCELLO III in his official
capacity as the Acting Commissioner of
Department of Corrections and Community
Supervision,

                        Defendants.
------------------------------------------------------------x

CASTEL, U.S.D.J.

            The four plaintiffs are parolees under the supervision of the Department of

Corrections and Community Supervision of the State of New York ("DOCCS").  Each plaintiff

was convicted of an offense that resulted in his classification as a person subject to the parole

conditions of the Sexual Assault Reform Act, N.Y. Exec. L § 259-c(14) ("SARA").

            SARA prohibits plaintiffs from knowingly entering "within one thousand feet of

the real property boundary line" of "any school grounds" when one or more person under the

age of eighteen is present.  N.Y. Exec. L § 259-c(14); N.Y. Penal L. § 220.00(14).  Plaintiffs

assert that, as applied to them, SARA is unconstitutionally vague under the Fourteenth

Amendment's due process clause because it does not give adequate notice of prohibited conduct

and invites or encourages arbitrary enforcement as to where they may reside and move

throughout their communities.  Plaintiffs also bring a claim asserting that SARA violates the

right to intrastate travel as recognized by the Second Circuit.  Plaintiffs seek an injunction

against enforcement of the 1,000-foot restriction and a declaration that the restriction violates the Fourteenth Amendment. No plaintiff seeks money damages. All claims are brought pursuant to 42 U.S.C. § 1983.

Defendant Darryl C. Towns chairs the New York State Board of Parole and defendant Daniel F. Martuscello III is the acting commissioner of DOCCS. They move to dismiss the First Amended Complaint (the "Complaint" or "Compl't") pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P. They urge that the Complaint does not contain allegations sufficient to demonstrate an injury-in-fact that is traceable to SARA and that plaintiffs therefore have not alleged Article III standing. They also urge that plaintiffs fail to plausibly allege that SARA's restrictions on movement and residence are unconstitutionally vague or burden their right to intrastate travel, and that the Complaint therefore fails to state a claim for relief.

For the reasons that will be explained, the Court concludes that the Complaint alleges plaintiffs' Article III standing. Plaintiffs M.G. and J.M. plausibly allege in Count One that SARA authorizes or encourages arbitrary enforcement as to certain specific movements within their communities, but the Complaint does not otherwise plausibly state a claim for relief. The motion to dismiss will therefore be granted in part and denied in part.

BACKGROUND.

A. Factual Allegations.

All four plaintiffs were convicted of crimes in New York state courts, served terms of incarceration, and were released on parole under the supervision of DOCCS. (Compl't ¶¶ 58-113.) Plaintiffs' offenses and the lengths of their terms of incarceration vary. M.G. was incarcerated for approximately five years following a hallway confrontation with several minors

that, he asserts, involved no sexual contact and was not sexual in nature. (Compl't ¶¶ 61-62.) B.Z. was incarcerated for 39 years after being convicted in the 1970s and 1980s of rape offenses against adults. (Compl't ¶¶ 74, 79.) J.L. was incarcerated for 27 years after being convicted of charges of rape and sexual abuse related to his minor daughter. (Compl't ¶ 90.) J.M. was incarcerated for approximately nine years after being convicted of sexual misconduct against a minor family member. (Compl't ¶¶ 102, 104.)

M.G., B.Z. and J.L. reside in New York City. (Compl't ¶¶ 58, 73, 89.) J.M. resides in Albany. (Compl't ¶ 101.) As described in the Complaint, because New York City and Albany are dense urban settings where schools are omnipresent, the plaintiffs' efforts to lead productive lives and find permanent residences have been frustrated by uncertainty as to how SARA's 1,000-foot school grounds restriction applies to their everyday movements and proposed residences. Plaintiffs assert that, based upon the text of SARA and statements and guidance issued by DOCCS, they are confused as to how the end-point of SARA's 1,000-foot school grounds restriction is calculated and whether the restriction is enforced at all in regard to their movements.

M.G. and J.M. both describe how SARA's alleged vagueness constrains their movements in their communities. M.G. asserts that he limits the time he spends at the Staten Island church run by his father because it is within 1,000 feet of school grounds, and that he takes an inefficient and cumbersome commuting route in order to avoid bus stops located within 1,000 feet of a school. (Compl't ¶¶ 66-67, 70.) M.G. also fears taking the subway to unfamiliar neighborhoods, lest he exit a station and inadvertently find himself near a school. (Compl't ¶ 71.) J.M. similarly asserts that he takes an inefficient commute in order to avoid travel within 1,000 feet of a school. (Compl't ¶¶ 105-07.) Because J.M. believes that local healthcare

providers could be deemed to be within 1,000 feet of school grounds, he travels forty minutes to visit a primary-care physician outside of Albany. (Compl't ¶ 108.) J.M. also asserts that, although he would like to visit Washington Park in Albany, he is unsure whether the entire park is off limits under SARA or only that portion of the park that falls within 1,000 feet of a nearby school. (Compl't ¶¶ 106-07.) Plaintiffs B.Z. and J.L. do not identify any locations or activities that they avoid out of fear that they will violate SARA's movement restrictions.

All four plaintiffs describe frustration with obtaining DOCCS approval for proposed residences that they believed were SARA-compliant. As described in the Complaint, a parole officer reviews a parolee's proposed choice of residence to determine whether it complies with SARA's 1,000-foot restriction. The officer's review is guided by mapping software called the Critical Infrastructure Response Information System ("CIRIS") and a visual inspection. (Compl't ¶ 29.) The parole officer then holds a conference with a bureau commander to approve or reject the address. (Compl't ¶ 29.) Persons subject to SARA are not part of the visual inspection or approval conference and do not have access to CIRIS. (Compl't ¶¶ 31-32.) Each plaintiff describes prolonged stays in homeless shelters due to denial of proposed addresses that they believed complied with SARA. M.G. ultimately obtained approval for an apartment in Staten Island after his parole officer denied his application to reside with his father. (Compl't ¶¶ 63-65.) B.Z. has resided in a shelter since receiving parole in 2022, during which time he has proposed more than twenty "seemingly" compliant addresses, "most" of which were rejected by his parole officer, "often" without explanation. (Compl't ¶ 81.) J.L. has resided in a homeless shelter since he received parole in 2022, during which time he has submitted "dozens" of proposed addresses, "many" of which he believes were more than 1,000 feet from a school, based on his use of online mapping tools. (Compl't ¶

94.) J.L. believes that his parole officer rejected these addresses because they did not comply with SARA, but the officer gave no explanation for the denial. (Compl't ¶ 96.) J.M. asserts that he has suffered "serious housing instability" due to "uneven and inconsistent" SARA enforcement. (Compl't ¶ 110.) In May 2022, J.M. received approval for a one-bedroom apartment, which was revoked in January 2024 after his parole officer told him that a new school had opened within 1,000 feet. (Compl't ¶ 110.) J.M. stated that on several days' notice, he relocated to a homeless shelter, where he resided in discomfort and distress until he located a new SARA-compliant apartment, at a cost of more than $3,000. (Compl't ¶¶ 111-12.)

        B. <u>Claims.</u>

        Count One brings an as-applied challenge, asserting that SARA's 1,000-foot restriction against entering school grounds is unconstitutionally vague under the Fourteenth Amendment. (Compl't ¶¶ 123-28.) Count Two brings an as-applied vagueness challenge directed to enforcement of the 1,000-foot restriction on plaintiffs' residences. (Compl't ¶¶ 129-33.) Count Three asserts that SARA unconstitutionally burdens plaintiffs' right to intrastate travel. (Compl't ¶¶ 134-36.) The Complaint seeks a declaration that SARA's 1,000-foot restriction violates the Fourteenth Amendment and an injunction against defendants' enforcement of the 1,000-foot restriction. (Compl't p. 35.) The Complaint also purports to be brought on behalf of a putative class that would consist of all persons subject to SARA and a sub-class of all persons residing in New York City who are subject to SARA. (Compl't ¶¶ 115-16.)

OVERVIEW OF SARA.

        New York law provides for the establishment of a Board of Parole, which has the authority to grant parole to incarcerated persons and require them to adhere to conditions of

parole.  N.Y. Penal L. § 70.40; 9 N.Y.C.R.R. §§ 8003.2, 8003.3.  If a parole officer has probable

cause to believe that a person under supervision has committed a non-technical violation, that

person may be subject to a notice of violation or a warrant for temporary detention.  N.Y. Exec.

Law § 259-i(3).

          In 2000, the New York legislature "enacted SARA to better protect the public,

and especially children, from sex offenders determined to pose the most risk."  Alvarez v.

Annucci, 38 N.Y.3d 974, 976 (2022).  SARA was broadened by legislative amendments in

2005.  See Williams v. Dep't of Corrections & Community Supervision, 136 A.D.3d 147, 151

(1st Dep't 2016) (reviewing SARA's legislative history).

          SARA provides that the Board of Parole "shall require, as a mandatory

condition" of parole for persons covered by the statute "that such sentenced offender shall

refrain from knowingly entering into or upon any school grounds, as that term is defined in

subdivision fourteen of section 220.00 of the penal law, or any other facility or institution

primarily used for the care or treatment of persons under the age of eighteen while one or more

of such persons under the age of eighteen are present . . . ."  N.Y. Executive L. § 259-c(14).

New York Penal Law section 220.00(14) defines "school grounds" to cover "any area

accessible to the public located within one thousand feet of the real property boundary line

comprising any such school or any parked automobile or other parked vehicle located within

one thousand feet of the real property boundary line comprising any such school.  For the

purposes of this section an 'area accessible to the public' shall mean sidewalks, streets, parking

lots, parks, playgrounds, stores and restaurants."  Thus, section 259-c(14), when read with

section 220.00(14), requires covered individuals to "refrain from knowingly entering" "any area

accessible to the public located within one thousand feet of the real property boundary line" of a school or child-care facility when one or more persons under the age of eighteen are present.

SARA has been subject to various constitutional challenges in the state courts of New York and within the Second Circuit. The New York Court of Appeals rejected a challenge asserting that SARA violated the Ex Post Facto Clause as to parolees whose offenses predated the law's 2005 amendments. People ex rel. Rivera v. Superintendent, Woodbourne Corr. Facility, 40 N.Y.3d 307 (2023). Rivera acknowledged that "the school grounds condition bears some resemblance to the historical punishment of banishment" but observed that the "condition does not preclude sex offenders from living and traveling within their communities and throughout the state." Id. at 315-16.[1]

In Williams, the First Department dismissed claims asserting that SARA violates the Ex Post Facto clause, the Fourteenth Amendment's right to substantive due process and the right to intrastate travel. 136 A.D.3d at 152-65. Williams acknowledged that "SARA by its terms restricts the parolee's freedom of movement and choice of residency. The restraints are neither minor nor indirect, especially when applied to parolees released to live in densely populated areas, where there are many schools or other institutions caring for children." Id. at 157-58. In dismissing the substantive due process challenge, Williams also observed that parolees "have no liberty interest, let alone a fundamental right, to be free from special conditions of parole. Quite the opposite, they have no constitutional right to be granted parole. Even if SARA were to implicate a deprivation of petitioner's liberty right, that right would not be a fundamental one." Id. at 164 (internal citations omitted). Other courts have dismissed

---

[1] Several other decisions have concluded that SARA does not violate the Ex Post Facto clause. See Devine v. Annucci, 150 A.D.3d 1104 (2d Dep't 2017); Peoples v. Leon, 2021 WL 1582173, at *14 (N.D.N.Y. Jan. 4, 2021), R&R adopted, 2021 WL 977222 (N.D.N.Y. Mar. 16, 2021); Smith v. Flynn, 2018 WL 3946453, at *7 (S.D.N.Y. Aug. 16, 2018).

claims asserting that aspects of SARA violate substantive due process. People ex rel. Johnson v. Superintendent, Adirondack Corr. Facility, 36 N.Y.3d 187 (2020) (SARA's requirement that parolee reside in residential treatment facility while awaiting SARA-compliant housing does not offend substantive due process or the Eight Amendment's prohibition against cruel and unusual punishment); Miller v. Smith, 2021 WL 4222981, at *7-9 (E.D.N.Y. 2021) (following Johnson); Khan v. Annucci, 186 A.D.3d 1370, 1373 (2d Dep't 2020) (plaintiff did not allege substantive due process violation in SARA's approved-residency requirement as applied to him; see also Santiago v. Annucci, 2021 WL 4392487, at *4 (S.D.N.Y. Sept. 24, 2021) (Karas, J.) (plaintiff did not allege lack of notice that he was required to live in an SARA-compliant housing or deprivation of an opportunity to dispute any special condition, thus failing to allege that SARA's residency restriction violated procedural due process).

    In Yunus v. Robinson, 2019 WL 168544, at *9-14 (S.D.N.Y. Jan. 11, 2019), then-District Judge Nathan adopted a Report and Recommendation ("R&R") of Magistrate Judge Moses that recommended denying a motion to dismiss certain claims challenging SARA on constitutional grounds, including a claim that SARA's 1,000-foot school grounds prohibition was void for vagueness as applied to plaintiff's movements throughout the community. Yunus concluded that a parole officer's preclearance eliminated the risk of inadvertent violation and thus that the SARA residency restriction was not void for vagueness. Id. at *12-13. The parties thereafter filed a stipulation of settlement, which Judge Nathan entered as an Order. (Yunus v. Robinson, et al., 17 Civ. 5839 (AJN) (BCM) at ECF 128.) Yunus appears to be the only authority to consider a vagueness challenge to SARA.

THE COMPLAINT ADEQUATELY ALLEGES PLAINTIFFS' ARTICLE III STANDING.

Defendants move to dismiss plaintiffs' claims pursuant to Rule 12(b)(1), urging that the Complaint does not identify an injury in fact and that plaintiffs therefore do not have Article III standing.  For standing purposes, the Complaint adequately identifies plaintiffs' constitutional interest in receiving notice of conduct curtailed by law and their due process interest in avoiding prohibitions that are alleged to be vague and subject to inconsistent enforcement.  See generally Knife Rights, Inc. v. Vance, 802 F.3d 377, 384 & n. 4 (2d Cir. 2015).  The Rule 12(b)(1) motion will therefore be denied.

A Rule 12(b)(1) motion may be either fact-based or facial.  Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016).  When, as here, the motion is directed to the face of the complaint, the court must accept all uncontroverted allegations as true and draw every reasonable inference in favor of the plaintiff.  Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014) (affirming the grant of a Rule 12(b)(1) motion).

"The Constitution limits federal courts' jurisdiction to actual cases or controversies.  See U.S. Const. art. III, § 2.  The doctrine of standing gives meaning to these constitutional limits by requiring a plaintiff to allege such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf."  Brokamp v. James, 66 F.4th 374, 386 (2d Cir. 2023) (internal citations, quotation marks and brackets omitted).  "To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision."  Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157-58 (2014) (quotation marks and brackets omitted).

An injury in fact includes the "'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). "A threatened injury may be sufficiently imminent if it is certainly impending, or there is a substantial risk that the harm will occur." Brokamp, 66 F.4th at 386 (quotation marks omitted). There is a "low threshold" for pleading an injury in fact. Sonterra Capital Master Fund Ltd. v. UBS AG, 954 F.3d 529, 534 (2d Cir. 2020).

"Where, as here, certain plaintiffs assert injury from threatened prosecution, the Supreme Court has instructed that imminence does 'not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat – for example, the constitutionality of a law threatened to be enforced.'" Knife Rights, 802 F.3d at 384 (quoting MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 128-29 (2007)). "[I]n the context of pre-enforcement challenges to criminal statutes, imminent injury can be established by plausible allegations that a plaintiff intends to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder." Id. (quotation marks and alterations omitted). This "constitutional interest" includes "the due process interest in having notice of conduct curtailed by criminal statutes" and specifically "the due process interest in avoiding vague criminal prohibitions." Id. at 384 n. 4.

The Complaint contains factual allegations sufficient to allege plaintiffs' Article III standing. M.G. alleges that lack of clarity as to SARA's reach complicated his search for housing near his family in Staten Island, has caused him to limit his involvement at his father's church, caused him to take a less-efficient commute and has made him fearful of moving about in New York City, lest he inadvertently find himself in proximity to school grounds. (Compl't

¶¶ 64, 66-67, 71.)  B.Z. asserts that he has submitted more than 20 proposed addresses for permanent residence that he believes were SARA complaint and that many were rejected by his parole officer without explanation.  (Compl't ¶¶ 81-84.)  B.Z. asserts that he has received conflicting guidance from parole officers about whether SARA is solely a residency restriction or whether it has broader application, causing him uncertainty over "whether regular behavior could result in his re-incarceration under the law."  (Compl't ¶ 86.)  J.L. asserts that his parole officer has rejected "dozens" of proposed addresses for permanent residence without explanation, even though the locations appear to be SARA-compliant.  (Compl't ¶¶ 94-97.)  J.M. asserts that his parole officer "has repeatedly confirmed" that SARA prohibits him from going within 1,000 feet of an area classified as school grounds, creating a daily burden to alter his routes.  (Compl't ¶¶ 105-07.)  J.M. also asserts that he paid more than $3,000 in out-of-pocket expenses and was forced to relocate from his pre-approved residence after being informed by his parole officer that a school had opened within 1,000 feet of his apartment.  (Compl't ¶¶ 110-12.)

For the purposes of a standing analysis, plaintiffs have adequately alleged that they have a sincerely held fear of revocation of parole and reincarceration based on what they allege to be unclear and inconsistent enforcement of SARA, and that the lack of clarity in the residence-approval process has caused confusion and expense.  This is sufficient to allege a due process interest in having notice of conduct curtailed by statute and in avoiding parole-related prohibitions that they allege to be vague.  See Knife Rights, 802 F.3d at 384 n. 4.  Defendants' Rule 12(b)(1) motion will be denied.

DEFENDANTS' RULE 12(b)(6) MOTION WILL BE GRANTED, EXCEPT AS TO THE CLAIMS OF M.G. AND J.M. ASSERTED IN COUNT ONE.

I.      Rule 12(b)(6) Standard.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A court assessing the sufficiency of a complaint must disregard legal labels or conclusions, which are not entitled to the presumption of the truth.  Iqbal, 556 U.S. at 678. Instead, the court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.  "Dismissal under Rule 12(b)(6) is therefore appropriate only if 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'"  Michael Grecco Products, Inc. v. RADesign, Inc., 112 F.4th 144, 150 (2d Cir. 2024) (quoting Sewell v. Bernardin, 795 F.3d 337, 339 (2d Cir. 2015)).

II.     The Motion to Dismiss Count One Will Be Granted in Part and Denied in Part.

A.      The Law Governing Prospective As-Applied Vagueness Challenges.

"Grounded in due process principles, the void-for-vagueness doctrine provides that '[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.'"  New York State Rifle & Pistol Ass'n, Inc. v. Cuomo, 804 F.3d 242, 265 (2d Cir. 2015) (quoting Cramp v. Board of Public Instruction, 368 U.S. 278, 287 (1961)).  "A statute can be impermissibly vague for either of two independent reasons.  First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.  Second, if it authorizes or even encourages arbitrary and discriminatory enforcement."  Hill v. Colorado, 530 U.S. 703, 732 (2000).  "This second ground, which the

Supreme Court recognizes as 'the more important aspect of the vagueness doctrine,' mandates that laws contain 'minimal guidelines to govern law enforcement.'" Thibodeau v. Portuondo, 486 F.3d 61, 66 (2d Cir. 2007) (quoting Kolender v. Lawson, 461 U.S. 352, 358 (1983)). "'[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.'" Farrell v. Burke, 449 F.3d 470, 485 (2d Cir. 2006) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972)).

"A statute may be challenged on vagueness grounds either as applied or on its face." Thibodeau, 486 F.3d at 67. "[C]ourts undertaking an as-applied challenge may determine either (1) that a statute as a general matter provides sufficiently clear standards to minimize the risk of arbitrary enforcement or (2) that, even without such standards, the conduct at issue falls within the core of the statute's prohibition, so that the enforcement was not the result of the unfettered discretion that law enforcement officers and factfinders might have in other, hypothetical applications of the statute." Id. at 67-68. "Where a statute provides insufficient general guidance, an as-applied vagueness challenge may nonetheless fail if the statute's meaning has a clear core." Farrell, 449 F.3d at 493. "In that case, the inquiry will involve determining whether the conduct at issue falls so squarely in the core of what is prohibited by the law that there is no substantial concern about arbitrary enforcement because no reasonable enforcing officer could doubt the law's application in the circumstances." Id. at 494.

Plaintiffs seek prospective injunctive and declaratory relief directed to SARA enforcement. "Courts consider prospective, as-applied vagueness challenges comparatively

infrequently.  Unlike the ordinary as-applied challenge, where the claim is that a prior

enforcement action was invalid, a prospective as-applied challenge seeks to prove that a statute

cannot constitutionally be applied to a specific course of conduct that the challenger intends to

follow."  Copeland v. Vance, 893 F.3d 101, 112 (2d Cir. 2018).  Such a challenge must be

"narrow" and not seek relief that is "so broad" that "it could be seen as a species of facial

challenge."  Id.  "A party asserting a prospective as-applied challenge must tailor the proof to

the specific conduct that she would pursue but for fear of future enforcement."  Id. at 112-13;

see also Expressions Hair Design v. Schneiderman, 581 U.S. 37, 44 (2017) (noting that

petitioners' prospective vagueness challenge cited "a wide array of hypothetical pricing

regimes" before proceeding to analyze "a limited challenge" to the "only pricing scheme that

they seek to employ.").

        "It is settled law that a special condition of parole violates due process when it is

so vague that a person of common understanding cannot know what actions are forbidden."

Farrell v. Burke, 2004 WL 2813175, at *7 (S.D.N.Y. Dec. 8, 2004) (Batts, J.); see also United

States v. Green, 618 F.3d 120, 124 (2d Cir. 2010) (condition of supervised release prohibiting

defendant from sporting colors, insignia or tattoos "relative to" criminal street gangs was void

for vagueness because of its "vast and indeterminate" scope); United States v. Simmons, 343

F.3d 72, 80-83 (2d Cir. 2003) (condition of federal supervised release prohibiting defendant

from accessing "pornographic material" was not void for vagueness as applied).  "[T]he Special

Condition is evaluated as applied to the particular facts of Plaintiff's case."  Farrell, 2004 WL

2813175, at *8.  "If the general class of offenses to which the condition is directed is clearly

within its terms, the condition will not be struck down as vague, even though there may be some

questionable marginal cases."  LoFranco v. U.S. Parole Comm'n, 986 F. Supp. 796, 809

(S.D.N.Y. 1997) (Peck, M.J.).  On a writ of habeas corpus brought under 28 U.S.C. § 2244, Magistrate Judge Peck recommended in <u>Lofranco</u> that the petitioner's condition of parole prohibiting association with any member of an "outlaw motorcycle gang" was unconstitutionally vague as applied because it did not distinguish lawful social groups from criminal clubs.  <u>Id.</u> at 809-11.  The recommendation was adopted by Judge Sprizzo.  <u>Id.</u> at 798-99.

### B.  M.G. and J.M. Plausibly Allege that SARA Authorizes or <u>Encourages Arbitrary Enforcement as to Their Movements.</u>

The Complaint identifies sufficiently narrow courses of conduct that M.G. and J.M. allege that they have not undertaken out of uncertainty over whether such conduct could be found to violate SARA's movement restrictions.  Specifically, they plausibly allege that the text of New York Executive Law section 259-c(14) and New York Penal Law section 220.00(14), when read alongside DOCCS guidance issued to parole officers, places them at risk of arbitrary enforcement when undertaking commuting routes in New York City and Albany.  M.G. also plausibly alleges a risk of arbitrary enforcement based on his presence at his father's church, and J.M. plausibly alleges a risk of arbitrary enforcement based on presence in a specified Albany public park and when visiting health-care providers.

First, the Complaint describes lack of clarity in the statutory text in how to measure the 1,000-foot prohibition against "knowingly entering into or upon school grounds, as that term is defined in [Penal Law section 220.00(14)] . . . ."  N.Y. Executive Law § 259-c(14). "School grounds" is defined to include "any area accessible to the public located within one thousand feet of the real property boundary line comprising any such school or any parked automobile or other parked vehicle located within one thousand feet of the real property boundary line comprising any such school.  For the purposes of this section an 'area accessible

to the public' shall mean sidewalks, streets, parking lots, parks, playgrounds, stores and restaurants." N.Y. Penal L. § 220.00(14).

       The Complaint asserts that the New York Penal Law gives adequate notice as to the starting point of the 1,000-foot boundary – i.e., "the real property boundary line comprising any such school" – but "is silent as to the second point of measurement." (Compl't ¶ 28.) The Complaint asserts that the statute "creates confusion" about establishments that fall partially within the 1,000-foot boundary. (Compl't ¶ 35.) Plaintiffs state that it is unclear whether an entire park or store is off limits if a limited portion of the park or store is within 1,000 feet of a school. (Compl't ¶ 35.) Essentially, plaintiffs assert that the statutory language is unlawfully vague as to how the 1,000-foot radius is measured in regard to the "area[s] accessible to the public" listed in the statute. On this issue, J.M. plausibly alleges that he is uncertain whether the entirety of Washington Park in Albany is restricted because a portion of the park is within 1,000 feet of a school's real property line, or whether only a limited portion of the park falls within SARA. (Compl't ¶ 107.)

       Second, plaintiffs point to contradictory public statements from DOCCS as to whether SARA contains any movement restriction at all. As summarized in the Complaint, in April 2018, DOCCS's Office of Counsel told a public defender organization that SARA was a residency restriction only. (Compl't ¶ 43.) However, in court filings, DOCCS has described the law as prohibiting covered individuals from traveling past or accessing areas near schools regardless of where they reside. (Compl't ¶ 42.)

       Third, the Complaint quotes broad guidance that DOCCS has issued to parole officers to determine whether an individual has violated the school grounds prohibition. (Compl't ¶ 38.) This guidance instructs parole officers to use "sound judgment" and "common

sense" to determine whether a violation has occurred, and states that "loitering in a place knowing it to be close to school property may be deemed a violation of the SARA condition." (Compl't ¶ 38.)  Parole officers are instructed to weigh "whether the entry was intentional, the proximity to the school, the purpose of the entry, whether there was contact with minors, whether the entry was an incidental and isolated incident, or recurring and suspicious, whether the Parole Officer had been notified, and whether the Parole Officer had previously warned the releasee or had granted permission for entry."  (Compl't ¶ 38.)  The Complaint does not attach the complete text of this guidance, nor have defendants furnished the remaining portion of the guidance in connection with their motion.  Plaintiffs characterize the guidance as conferring "enormous" discretion on parole officers, and states that DOCCS has issued no official directives limiting enforcement to some form of weighing of these factors.  (Compl't ¶¶ 37, 39.) Plaintiffs assert that they are not provided with a written copy of this guidance.  (Compl't ¶¶ 39, 40.)  In their opposition memo, plaintiffs clarify that they are not challenging the delegation of broad authority to parole officers in the abstract, but that they are left to guess at how parole officers are permitted to exercise that discretion within the broad text of SARA.  (Opp. Mem. at 12 n.7.)

        Defendants principally urge that plaintiffs do not plausibly allege a prospective as-applied challenge because they do not identify conduct that they intend to pursue and instead raise "vague hypotheticals" about potential enforcement actions against them.  (Def. Mem. at 16-18.)  As noted, a prospective as-applied challenge should be "narrow" and "must tailor the proof to the specific conduct that [plaintiff] would pursue but for fear of future enforcement." Copeland, 893 F.3d at 112-13.

The Court concludes that M.G. and J.M. have plausibly alleged conduct that they wish to engage in but have avoided but-for the alleged lack of clarity in how SARA is enforced. M.G. asserts that he "limits the time" that he spends at his father's Staten Island church[2] because it is 300 feet from a school, takes a circuitous commute in order to avoid bus stops in proximity to schools and is fearful that he will violate SARA when he exits subway trains in unfamiliar neighborhoods. (Compl't ¶¶ 66-67, 70-71.) J.M. asserts that he has altered his commuting route to avoid traveling within 1,000 feet of the real property line of a school and asserts that, although he would like to visit Washington Park, he is unsure whether the entire park is off limits or only some portion of the park, due to uncertainty in how the 1,000-foot prohibition is measured. (Compl't ¶¶ 106-07.) J.M. also states that he has refrained from visiting nearby medical professionals out fear that he will be within 1,000 feet of school grounds, and that he now visits a primary-care doctor located forty minutes outside of Albany. (Compl't ¶ 108.) Because of the purported ambiguities in how SARA is enforced, J.M. avoids "large swaths" of Albany because he fears violating SARA. (Compl't ¶ 107.)

The potential for arbitrary enforcement is made more plausible by plaintiffs' allegations of DOCCS's broad guidance on SARA enforcement and varying conflicting pronouncements about the law's application to movement and travel. Though the Complaint does not quote the statement, it asserts that a DOCCS official has described SARA as a residential restriction only even though in court filings DOCCS has maintained that SARA applies to movement. (Compl't ¶¶ 42-43.) As to DOCCS's guidance to parole officers, while the text of section 259(c)-14 suggests a blanket prohibition against "knowingly entering into or

---

[2] Though not raised by any party, the Court notes that churches are not among the "area[s] accessible to the public" listed in section 220.00(14) ("For the purposes of this section an 'area accessible to the public' shall mean sidewalks, streets, parking lots, parks, playgrounds, stores and restaurants."). It may be that presence within a church does not constitute a SARA violation. The Court expresses no view on this undeveloped issue.

upon" the school grounds defined in section 220.00(14), DOCCS guidance suggests wide discretion in SARA's application, instructing parole officers to use "sound judgment" and "common sense" in applying the statute and listing a variety of factors that they should consider.  This flexibility in how SARA is to be enforced suggests that DOCCS does not view SARA as establishing a blanket prohibition against movement and lends plausibility to plaintiffs' claims of risk of arbitrary enforcement.

Defendants also point to non-litigation avenues that plaintiffs could pursue to resolve uncertainty about SARA, stating that parolees can submit formal grievances and engage a non-adversarial process to review "any written or unwritten policy," and assert that plaintiffs have not exhausted available administrative remedies.  (Def. Mem. at 18.)  But "[p]laintiffs suing under 42 U.S.C. § 1983 generally need not exhaust their administrative remedies. . . . Accordingly, exhaustion is necessary only where Congress specifically requires it, either explicitly or implicitly."  Roach v. Morse, 440 F.3d 53, 56 (2d Cir. 2006).  Defendants do not urge that plaintiffs are required to administratively exhaust their claims before pursuing the relief sought in this action.

Defendants also urge that plaintiffs are not at risk of violating SARA because the law does not reach "inadvertent" violations.  (Def. Mem. 19.)  In support, they cite United States v. MacMillen, 544 F.3d 71, 73-76 (2d Cir. 2008), which held that a condition of federal supervised release prohibiting a defendant from "frequenting location where 'children are likely to congregate'" did not place supervisees at risk of an accidental violation "because conditions of supervised release are read to exclude inadvertent violations."  Defendants cite no authority suggesting that DOCCS uses a similar understanding about a parolee's inadvertent violations. Further, SARA prohibits covered persons from "knowingly" entering school grounds, N.Y.

Executive Law § 259-c(14), and M.G. and J.M. describe themselves as acting cautiously due to their actual knowledge of the proximity of school grounds. The Court need not decide at this juncture whether by informing themselves of school locations, M.G. and J.M. could be held to have satisfied the knowledge requirement of SARA. Cf. State v. Floyd Y., 56 Misc. 3d 271, 273 (N.Y. Sup. Ct. N.Y. Cnty. 2017) ("Presumably, however, the fact that there are schools and child care facilities throughout New York City is something everyone, including sex offenders, know.").

Lastly, as to M.G. and J.M., the courses of conduct described in the Complaint do not "fall[ ] so squarely in the core of what is prohibited by the law that there is no substantial concern about arbitrary enforcement because no reasonable enforcing officer could doubt the law's application in the circumstances." Farrell, 449 F.3d at 494. Accessing public transportation, M.G.'s presence in his father's church, visiting a health-care provider and entering a portion of a public park more than 1,000 feet from a school property line are not so squarely within the core of SARA that the law's application could be beyond doubt, as would likely be the case if a covered parolee sought direct access to school facility or a playground.

The Court therefore concludes that the motion to dismiss Count One will be denied as to M.G.'s claim involving presence in his father's church, commute and subway travel and J.M.'s claim involving his commute, visits to health-care providers and access to Washington Park in Albany.

C. No Plaintiff Plausibly Alleges that SARA Is Unlawfully Vague as to His Presence at Mandatory Check-Ins and Counseling Sessions.

As part of Count One, M.G., B.Z. and J.L. all assert that they fear violating SARA when complying with conditions of parole that require them to make mandatory check-ins at the NYPD Sex Offender Monitoring Unit at 100 Centre Street and attend certain in-

person counseling sessions.  (Compl't ¶¶ 68-69, 87, 98.)  They allege that 100 Centre Street and the locations of their mandatory counseling sessions fall within 1,000 feet of school grounds, therefore putting them at risk of violating SARA when they comply with other conditions of their parole.  (Id.)

But SARA expressly provides that "[n]othing in this subdivision shall be construed as restricting any lawful condition of supervision that may be imposed on such sentenced offender."  N.Y. Exec. L. § 259-c(14).  No plaintiff asserts that he has received a formal or informal warning that he risks violating SARA by complying with mandatory conditions that place him within 1,000 feet of school grounds.  The text of SARA itself precludes plaintiffs from being found in violation, and plaintiffs identify no reason to conclude that the statute is vague as applied to mandatory check-ins and counseling sessions.

To the extent that plaintiffs assert that SARA is unlawfully vague as applied to attending mandatory check-ins and counseling sessions, the motion to dismiss will be granted.

### D.  The Motion to Dismiss Count One Will Be Granted as to the Claims of B.Z. and J.L.

B.Z. and J.L. do not identify specific conduct that they would pursue but for fear of SARA enforcement.  Count One will therefore be dismissed as to B.Z. and J.L.

B.Z.'s allegations primarily relate to SARA's residency restrictions, though he asserts that he "received mixed messages" about SARA's application to movement, with one parole officer telling him that he "cannot go near children in any context" and another describing SARA as "only a residency restriction."  (Compl't ¶ 86.)  B.Z. asserts that as a result, he is "not sure whether regular behavior" could result in a violation.  (Compl't ¶ 86.)  But the question of whether B.Z. can "go near children" is different than the enforcement of the 1,000-foot exclusion zone and the Complaint does not explained what is encompassed by the phrase

- 21 -

"regular behavior."  B.Z. does not identify a narrow course of conduct that he would pursue but-for uncertainty over Sara's movement restrictions.  See Copeland, 893 F.3d at 112.

J.L.'s allegations are focused on SARA's residency restrictions and do not identify locations or activities that J.L. avoids due to SARA's movement restrictions.  (Compl't ¶¶ 89-100.)

Because B.Z. and J.L. do not identify specific conduct that they would pursue but for fear of future enforcement, Copeland, 893 F.3d at 112-13, they do not plausibly allege a prospective as-applied vagueness claim.

E.    The Court Does Not Reach Whether Plaintiffs Plausibly Allege that
      SARA's Text Provides Adequate Notice of Prohibited Activity.

As noted, a plaintiff may demonstrate that a statute is impermissibly vague either because it does not provide a person of ordinary intelligence a reasonable opportunity to understand what is prohibited, or, alternatively, because it authorizes or encourages arbitrary enforcement.  Hill, 530 U.S. at 732.  The second ground is considered "the more important aspect of the vagueness doctrine . . . ."  Thibodeau, 486 F.3d at 66 (quotation marks omitted).

Because B.Z. and J.L. have not identified a narrow course of conduct that they wish to pursue in connection with this prospective as-applied vagueness challenge, and because M.G. and J.M. have plausibly alleged that SARA authorizes or encourages arbitrary enforcement, the Court need not decide whether the Complaint also plausibly alleges the alternative vagueness grounds that the text of SARA does not provide adequate notice of prohibited conduct.  See Yunus, 2019 WL 168544, at *13 ("As the Court finds that Plaintiff has sufficiently stated a claim that the condition is void for authorizing arbitrary enforcement, it need not reach whether it is void for lack of notice.").

- 22 -

III.    <u>Count Two Will Be Dismissed.</u>

Count Two will be dismissed because no plaintiff plausibly alleges that, as applied to him, SARA places him at risk of unknowingly violating his conditions of parole based on the location of his residence.

It is well-established that SARA acts as a restriction on the residency of covered individuals.  "Though Executive Law § 259-c(14) is not a residency restriction by its explicit language, the 'practical effect' of the condition 'is that any sex offender who is subject to [it] is unable to reside within 1,000 feet of a school or facility as defined in Penal Law § 220.00(14)(b).'"  <u>Rivera</u>, 40 N.Y.3d at 311 (quoting <u>People v. Diack</u>, 24 N.Y.3d 674, 682 (2015)); <u>accord</u> <u>Alvarez</u>, 38 N.Y.3d at 976 ("The SARA residency restriction bars offenders convicted of certain sex offenses from residing within 1,000 feet of a school.").

The Complaint asserts that parole officers review a parolee's proposed residence using the CIRIS mapping software program as an aid to determine whether a proposed residence is within 1,000 feet of school grounds.  (Compl't ¶ 29.)  Plaintiffs cannot access CIRIS, leaving them to "cobble together other resources" to search for a SARA-compliant residence.  (Compl't ¶ 32.)  Under a DOCCS directive, parole officers also conduct a visual inspection to determine whether a residence is SARA-compliant.  (Compl't ¶ 29.)  After the visual inspection, the parole officer holds a conference with a bureau commander to determine approval or rejection of a proposed address.  (Compl't ¶ 29.)  Persons subject to SARA are not part of the visual inspection or the approval conference.  (Compl't ¶ 31.)  The Complaint asserts that because the approval process is opaque, it can take years for individuals to locate SARA-compliant housing, even with the help of specialists.  (Compl't ¶¶ 32-34.)

Each plaintiff describes housing searches that were frustrated by SARA approval. M.G. resided in a homeless shelter before his parole officer approved an apartment on Staten Island, after previously rejecting M.G.'s application to live with his father. (Compl't ¶¶ 62-65.) B.Z. has resided in homeless shelters since his release from prison in 2022, during which time he has proposed more than twenty apartment addresses, "most" of which have been rejected by his parole officer. (Compl't ¶¶ 73, 80-85.) He cites to two addresses in Brooklyn that, "conservatively measured," were more than 1,000 feet from school grounds. (Compl't ¶ 82.) J.L. asserts that he has resided in a Bronx homeless shelter since his 2022 release. (Compl't ¶¶ 92-93.) He states that he has submitted "dozens" of addresses to his parole officer, "many" of which he believes are more than 1,000 feet from a school based on online mapping tools, including six specific addresses. (Compl't ¶¶ 94-95.) J.L. states that his parole officer rejected the addresses without explanation. (Compl't ¶ 95.) J.M. asserts that in January 2024, after nearly two years of residing in a SARA-compliant apartment, his parole officer informed him that a new school had opened within 1,000 feet, rendering the address non-compliant. (Compl't ¶ 110.) J.M. then relocated to a homeless shelter while he conducted a new housing search and eventually identified a compliant apartment, with the process causing him to incur an out-of-pocket cost of $3,000. (Compl't ¶¶ 111-12.)

Plaintiffs' frustration with the residence-approval process does not plausibly allege that SARA is unconstitutionally vague as applied to their proposed residences. In contrast to the allegations of M.G. and J.M. regarding the lack of clarity in SARA's application to their movements, plaintiffs have described clear guidance from parole officers about whether their proposed residences are proscribed by SARA. The respective allegations of B.Z. and J.L. asserting that "most" and "many" of their proposed addresses were SARA-compliant implies

that at least some of them may not have non-compliant.  As described in the Complaint, parole

officer discretion is curbed by DOCCS's use of the CIRIS software and the conference held

between the parole officer and the bureau manager.  (Compl't ¶ 29.)  Plaintiffs are explicitly

notified whether a proposed address is approved.  See Yunus, 2019 WL 168544, at *13

("because Special Condition No. 4 requires that a proposed residence be precleared by

Plaintiff's parole officer, it is not void for vagueness.").  To the extent that plaintiffs urge that

they have no access to the parole officers' visual inspections and the parole officer's conference

with the bureau manager, such concerns seem to implicate notice and an opportunity to be heard

rather than unconstitutionally vague enforcement parameters.[3]

Though not cited by the parties, the Court also notes that, in Diack, the New

York Court of Appeals described SARA as one part of a comprehensive legislative scheme for

the residential placement of sex offenders:

> [R]egardless of whether the level two or level three sex offender is
> sentenced to probation or is released, the legislature has determined
> that placement of the sex offender is dependent on a number of
> factors, all of which must be considered by the relevant agency.
> Such factors include the concentration of registered sex offenders in
> a given area or municipality; the number of registered sex offenders
> residing at a certain property; the proximity of entities that have
> vulnerable populations; the sex offender's accessibility to family
> members or friends or other supportive services such as local sex
> offender treatment programs; and the availability of permanent,
> stable housing so as to reduce the possibility that the sex offender
> will be transient.

---

[3] A parolee may successfully challenge the denial of a proposed residence if the denial was arbitrary and
capricious.  See Telford v. McCartney, 155 A.D.3d 1052, 1054 (2d Dep't 2017) (ruling in Article 78 proceeding
that DOCCS bureau chief acted arbitrarily and capriciously by denying approval of petitioner's proposed SARA-
compliant residence based on "speculation" about potential conflict between petitioner and his community).

24 N.Y.3d at 684 (citing N.Y. Executive Law § 243(4)(a)-(e) (authorizing regulations

concerning housing of level-three sex offenders); N.Y. Correction Law § 203(1)(a)-(e); N.Y.

Social Services Law § 208(8)(b)(i)-(iv)); see also Diack, 24 N.Y.3d at 682-83 (discussing

SARA in context of other statutes and regulations governing placement of sex offenders).  On

this motion to dismiss, where the Court and the parties are bound by the four corners of the

pleadings, defendants do not assert that plaintiffs' proposed residences were scrutinized

pursuant to non-SARA criteria, and the Court does not consider that possibility in connection

with the motion.

Because the Complaint does not plausibly allege that SARA's residency

restriction is unconstitutionally vague as applied to plaintiffs, the motion to dismiss Count Two

will be granted.

IV.    Count Three Will Be Dismissed.

Count Three asserts that SARA's 1,000-foot restriction burdens plaintiffs' rights

to intrastate travel.  (Compl't ¶¶ 135-36.)  The Second Circuit has held that the Constitution

guarantees a right to intrastate travel or "free movement" within a state.  Williams v. Town of

Greenburgh, 535 F.3d 71, 75 (2d Cir. 2008).  "In doing so, the court has not located that right in

any particular constitutional text.  Rather, it has identified a constitutional right to travel,

whether interstate or intrastate, as fundamental to 'personal liberty.'"  Jeffery v. City of New

York, 113 F.4th 176, 191 (2d Cir. 2024).  "While the parameters of that right have not been

sharply defined by our Court, it is clear that the right protects movement between places and has

no bearing on access to a particular place."  Williams, 535 F.3d at 75 (emphasis in original).  A

right to intrastate travel is implicated when plaintiffs identify "a burden imposed on their

freedom to move between places otherwise open to their presence."  Id. at 76.  Thus, "expulsion

- 26 -

and temporary exclusion" from a specific location do not infringe upon travel, and a government's "decision to limit access to its facilities does not interfere with the right to free movement . . . ." Id.

Count Three asserts that SARA unconstitutionally burdens plaintiffs' travel for necessities like food, medical care and compliance with parole obligations. (Compl't ¶ 135.) But no plaintiff has described how SARA affects his access to food, and, as previously discussed, the text of SARA provides that a covered individual does not violate the 1,000-foot restriction when complying with another condition of parole, such as mandatory check-ins. J.M. alleges that he has tailored his choice of health-care providers out of fear that he will violate SARA (Compl't ¶ 108), but, assuming that SARA constrains his choice of health care providers, expulsion from a specific location does not violate a travel right. Williams, 535 F.3d at 75. The Complaint alleges that J.M. freely travels forty minutes away in order to visit a chosen health care provider. (Compl't ¶ 108.) Accordingly, no plaintiff has plausibly alleged that the application of SARA has unconstitutionally burdened his right to travel.

Count Three also asserts that SARA unconstitutionally burdens plaintiffs' "right to remain in public areas for innocent purpose in violation of the Fourteenth Amendment." (Compl't ¶ 136.) In their memorandum, plaintiffs cite authorities referencing a "freedom to loiter for innocent purposes." See City of Chicago v. Morales, 527 U.S. 41, 53 (1999) (referencing freedom to loiter in upholding vagueness-based challenge to anti-loitering statute); Akinnagbe v. City of New York, 128 F. Supp. 3d 539, 548 (E.D.N.Y. 2015) (summarizing "freedom to loiter" in dictum before applying First Amendment scrutiny to dispersal order); Nat'l Shooting Sports Found., Inc. v. James, 604 F. Supp. 3d 48, 67 (N.D.N.Y. 2022) (making passing reference to "right to loiter" during discussion of vagueness challenge). The Complaint

does not describe how SARA impairs a freedom to loiter or identify how any plaintiff seeks to loiter in a lawful manner but refrains for doing so because of SARA.

Count Three will therefore be dismissed.

V.    The Complaint Does Not Otherwise State a Claim for Relief.

In addition to plaintiffs' as-applied vagueness challenges and their claim directed to intrastate travel, the Complaint includes certain allegations that could be generously read as asserting additional theories as to why enforcement of SARA ought to be enjoined as unlawful.

Plaintiffs' class allegations assert the plaintiffs raise the common question of whether SARA "is facially constitutional" (Compl't ¶ 119), but the Complaint does not otherwise include allegations that support a facial challenge to SARA. See Copeland, 893 F.3d at 110 (plaintiff bringing a facial challenge must show that "a statute is so fatally indefinite that it cannot constitutionally be applied to anyone"). To the extent plaintiffs seek to bring a claim asserting that SARA is vague on its face, such a claim will be dismissed.

The Complaint includes detailed allegations going to whether SARA is rationally related to a governmental interest, including assertions that the law is "unnecessary," premised on "myths and stereotypes" and contrary to social science research into the risks of recidivism. (Compl't ¶¶ 52-57.) But the Complaint does not otherwise purport to allege that SARA violates the guarantees of substantive due process. The Complaint also identifies the races of the four plaintiffs (Compl't ¶¶ 6-9) but does not assert that SARA has been enforced against them in a racially discriminatory manner.

To the extent that the Complaint could be construed to assert a claim other than those set forth in Counts One through Three, any such claim is dismissed.

CONCLUSION.

Defendants' motion to dismiss for lack of Article III standing is DENIED.

Defendants' motion to dismiss is GRANTED, except to the extent that Count One plausibly

alleges a prospective as-applied vagueness challenge as to M.G.'s presence at his father's

church and his travel routes, and J.M. alleges a prospective as-applied vagueness challenge as to

his travel routes, visits to health-care providers and presence in Washington Park in Albany.

The Clerk is respectfully directed to terminate the motion.  (ECF 32.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
        May 16, 2025