

New York Civil Liberties Union
125 Broad Street, 19th Floor
New York, New York 10004
212.607.3300

May 18, 2026

Via ECF
The Honorable P. Kevin Castel
United States District Judge
United States District Court Southern District of New York
500 Pearl Street
New York, New York 10007

  Re: *M.G. v. Towns*, 24-cv-04051-PKC

Dear Judge Castel:

  We represent Plaintiffs in this case challenging the constitutionality of New York Executive Law § 259-c (14)'s 1,000-foot geographic restriction ("SARA"). The next conference before this Court is scheduled for May 19, 2026. Pursuant to this Court's Individual Rules at 3(A)(i), Plaintiffs submit this pre-motion letter to set forth the bases for their motion for summary judgment on their claim that SARA's 1,000-foot restriction is unconstitutionally vague as applied to Plaintiffs M.G.'s and J.M.'s movements.

  The Parties have conferred on a briefing schedule for any motions for summary judgment. We respectfully propose that motions for summary judgment be due on **June 30, 2026**, responsive briefs be due on **July 28, 2026**, and reply briefs be due on **August 11, 2026**.

## I. Procedural History

  On May 28, 2024, Plaintiffs brought this action as a putative class action alleging that SARA's 1,000-foot restriction is unconstitutionally vague in violation of the Fourteenth Amendment. ECF No. 1. On September 18, 2024, Plaintiffs amended their complaint and on November 1, 2024, Defendants moved to dismiss the amended complaint. ECF Nos. 22, 32.

  On May 16, 2025, this Court granted in part and denied in part Defendants' motion. ECF 38. This Court denied the motion with respect to Plaintiffs M.G. and J.M.'s as-applied challenges to SARA as a movement restriction. *Id.* at 15-22. Specifically, this Court held that Plaintiffs M.G. and J.M. had "plausibly allege[d] a prospective as-applied vagueness challenge as to M.G.'s presence at his father's church and his travel routes, and J.M. allege[d] a prospective as-applied vagueness challenge as to his travel routes, visits to health-care providers and presence in Washington Park in Albany." *Id.* at 20. In coming to this conclusion, this Court recognized that M.G. and J.M. not only adequately identified "conduct that [they] would pursue but for fear of future enforcement," *id.* at 17 (citing *Copeland v. Vance*, 893 F.3d 101, 112-13 (2d Cir. 2018)), but also plausibly alleged notice problems with SARA and the potential for arbitrary enforcement given Defendants' "broad guidance on SARA enforcement and varying conflicting pronouncements about the law's application to movement and travel" *id.* at 18. After the motion to dismiss, the parties proceeded to discovery, which culminated on May 4, 2026. *See* ECF 66.

## II.    Legal and Factual Grounds that SARA is Unconstitutionally Vague As-Applied to Where Plaintiffs Can Travel.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and [the movant is] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are material if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Here, the undisputed facts establish that SARA as applied to the travel of both M.G. and J.M. is unconstitutionally vague. A law is unconstitutionally vague in violation of the Fourteenth Amendment: (1) "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits;" or (2) "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). SARA, as applied to the travel of Plaintiffs, suffers from both of these faults in that it fails to provide them with adequate notice of which publicly accessible areas they may travel to without violating the law and it gives parole officers unfettered discretion to prohibit releasees from entering into certain publicly accessible areas.

### A.    SARA Fails to Provide Adequate Notice to J.M. and M.G. as to Where They Can Travel Without Violating the Law.

Concerning the notice prong, "[d]ue process requires that [a] condition[ ] of supervised release be sufficiently clear to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *United States v. Simmons*, 343 F.3d 72, 81 (2d Cir. 2003). A condition must provide "notice as to what conduct could trigger a charge of violating the condition," including "what he must do, [and] for how long, to ensure he will not be re-incarcerated." *United States v. Sims*, 92 F.4th 115, 125 (2d Cir. 2024) (citation omitted). "Men of common intelligence cannot be required to guess at the meaning of [an] enactment." *Winters v. New York*, 333 U.S. 507, 515-516 (1948).

SARA fails to provide adequate notice of where Plaintiffs J.M. and M.G. may travel as its text is not sufficiently clear as to when non-residential locations fall within 1,000 feet of a school and thus whether entry is prohibited.[1] *See Cunney v. Bd. of Trustees of Vill. of Grand View*, N.Y., 660 F.3d 612 (2d Cir. 2011) (finding a zoning ordinance unconstitutionally vague for not providing

---

[1] Specifically, the law prohibits people subject to SARA from entering "school grounds" where "school grounds" is defined to mean:

> (a) in or on or within any building, structure, athletic playing field, playground or land contained within the real property boundary line of a public or private elementary, parochial, intermediate, junior high, vocational, or high school, or (b) any area accessible to the public located within one thousand feet of the real property boundary line comprising any such school or any parked automobile or other parked vehicle located within one thousand feet of the real property boundary line comprising any such school. For the purposes of this section an "area accessible to the public" shall mean sidewalks, streets, parking lots, parks, playgrounds, stores and restaurants.

N.Y. Pen. L. § 220.00(14).

an objective way of measuring to comply with the ordinance). The undisputed facts also establish that DOCCS does not have any uniform and objective guidance that provides notice as to the non-residential locations that are prohibited. DOCCS merely reproduces SARA's vague statutory text into Plaintiffs' conditions of release leaving Plaintiffs and their parole officers unsure of what the law covers.

By text, SARA in relevant part prohibits subject individuals from knowingly entering "area[s] accessible to the public" within 1,000 feet of a school, where "area[s] accessible to the public" are defined as "sidewalks, streets, parking lots, parks, playgrounds, stores and restaurants." N.Y. Executive Law § 259-c (14); N.Y. Penal Law § 220.00(14). The problem with this prohibition is twofold. First, while the law defines the first point of measurement as "the real property boundary line comprising any such school," it does not define the second point of measurement. N.Y. Penal Law § 220.00(14). Second, SARA's text does not clarify whether an entire publicly accessible area is prohibited if only a portion of that publicly accessible area location falls within 1,000 feet of a school. This vagueness leaves open the question of whether individuals are prohibited from entering the whole location or just the portion within 1,000 feet.

The undisputed evidence shows that DOCCS does not have uniform and objective guidance through directives or training to parole officers that address these key areas of vagueness in the text of SARA. Accordingly, there is considerable confusion and uncertainty among the parole officers entrusted with enforcing SARA as to the second point of measurement for places such as parks, doctor's offices or travel routes, from tax boundaries to front doors. For example, where one of Plaintiffs' parole officers testified that he would use the corners of a park to ascertain whether it was SARA-compliant, another parole officer stated that she had no idea how one would evaluate whether a park was SARA compliant. There is also confusion as to how to deal with locations that are partially within 1,000 feet of a school. For example, Plaintiff J.M.'s parole officer noted that he was unsure how SARA applies in this scenario, but the determination whether to prohibit access to such a location may depend on the type of location, including whether it was a park or a store. Further, the undisputed evidence establishes that unlike approving residential addresses as SARA-compliant, there is no regular and uniform pre-approval process for individuals to check whether every location they may travel is prohibited by SARA.

Without any "objective baseline" refining the meaning of SARA's movement prohibition, Plaintiffs J.M. and M.G. and their parole officers are only equipped with the vague statutory language itself. *Reeves*, 591 F.3d at 81. As a result, J.M. and M.G. have no means by which to ascertain whether certain non-residential location are SARA-compliant and are left to predict how a parole officer may employ their "subjective" judgment on whether a location falls within 1,000 feet of a school and whether an entire location is prohibited simply because a portion of it may fall within those 1,000 feet. *Id.* Specifically, J.M. lacks notice of whether Washington Park in Albany, certain medical offices, and travel routes are SARA-compliant and M.G. cannot ascertain whether his travel commutes in New York City are SARA-compliant.

**B.  SARA's 1,000-foot movement restriction's ambiguity promotes arbitrary and discriminatory enforcement.**

SARA's movement restriction is independently unconstitutionally vague as applied to Plaintiffs because it encourages arbitrary enforcement. A statute is unconstitutionally vague for encouraging arbitrary enforcement if it: (1) fails to "provide[] sufficiently clear standards to eliminate the risk of arbitrary enforcement," and (2) the "conduct at issue falls [outside] the core of the statute's prohibition." *Dickerson v. Napolitano*, 604 F.3d 732, 748 (2d Cir. 2010) (internal citation omitted).

1.  *SARA's thousand-foot movement restriction's lack of coherent standards renders J.M. and M.G. vulnerable to arbitrary enforcement.*

To begin, because SARA's text is extremely broad in its coverage, strict compliance with its terms is nearly impossible for Plaintiffs J.M. and M.G. Given the amount of schools in urban areas, the prohibition to not knowingly enter within 1,000 feet of a school encompasses large swaths of the cities like New York City and Albany where J.M. and M.G. live. *See, e.g.*, *State v. Floyd Y.*, 50 N.Y.S.3d 848, 849 (N.Y. Sup. Ct. N.Y. Co. 2017) ("[I]n dense urban areas like Manhattan . . . most 'publicly accessible areas' are within 1,000 feet of some kind of school or child care institution.). Indeed, Plaintiffs' own parole officers have testified schools are almost everywhere in certain key areas that Plaintiffs travel like downtown Albany for J.M. and near M.G.'s father's church on Staten Island. Therefore, it is practically infeasible for J.M. and M.G. to avoid entering within 1,000 feet of a school to do daily activities. Accordingly, the statute alone "places almost limitless discretion in the hands of [] parole officers to arrest [Plaintiffs] for traveling almost anywhere in the city that [they] live[], raising precisely the concerns that void-for-vagueness doctrine seeks to prevent." *Yunus v. Robinson*, 17-cv-5839 (AJN) 2019 WL 168544, at *13 (S.D.N.Y. Jan. 11 2019); *see Farid,* 593 F.3d at 243 (explaining that "catch-all" rule predictably allowed prison officials to "determine in their unbounded discretion" what was and was not permitted).

The undisputed evidence shows that Defendants have no directives, training, or guidance constraining this discretion. In fact, the undisputed evidence shows that Defendants have no formal policy on how to interpret, monitor, or enforce SARA with respect to how to determine whether a non-residential location is within 1,000 feet from a school. The testimony and documents also establish that parole officers do not receive any written instruction on how to do so. This stands in stark contrast to DOCCS's approach to SARA's residency restriction, in which it has a uniform methodology for examining whether a potential home falls within 1,000 feet of a school, established procedures for verifying this determination, and in-depth training on these methods.

Without any limiting standard, parole officers' enforcement practices concerning SARA's movement restriction are highly varied. Each parole officer testified to a different understanding of what is prohibited by SARA, including what types of locations are covered by the statute and whether it applies to travel routes or non-residential locations at all. These inconsistencies alone illustrate how DOCCS's lack of guidance fosters arbitrary enforcement. *See Cunney*, 660 F.3d at 622 (The "[d]efendants' various interpretations of [the statute's] requirements" is evidence that its "vagueness authorizes arbitrary enforcement."). Indeed, these parole officers and senior parole

officers repeatedly testified that these decisions ultimately lie at their discretion, explaining that enforcement depends on the specific circumstances of the case at hand.

For example, M.G.'s former parole officer interpreted SARA to exclusively apply to registrants' residences and thus, testified that it did not prohibit M.G. from volunteering at his father's church, which is in close proximity to a school. Even though his prior parole officer assured M.G. that this activity would not run afoul of SARA, he limits the amount and nature of time he spends there to ensure that he will not be found in violation by another parole officer who might encounter him at the church. Additionally, J.M.'s parole officer states that under certain circumstances he could violate someone he is supervising for being present in a park if they entered the portion that falls within 1,000 feet of the real property line of a school and that such a determination in part would be based on the purpose of the entry and whether in his determination that entry was "suspicious".

Accordingly, J.M.'s and M.G.'s fate entirely relies on their parole officers' personal approaches to enforcing SARA's movement restriction and how they choose to exercise their authority in any given moment. There is no genuine dispute of material fact that whether M.G. is permitted to attend his father's church, wait at certain travel hubs, and use forms of public transportation, all of which technically fall within 1,000 feet of a school, is entirely up to his parole officer's unfettered discretion. Similarly, there is no genuine dispute of material fact that whether J.M. may visit Washington Park (in part or in whole), go to medical providers, and use public transit commutes, all of which fall within 1,000 feet of a school, relies exclusively on his parole officer's unfettered discretion. Because there is no constraint on parole officers' discretion to prohibit registrants from accessing certain locations, M.G. and J.M. are always at risk of arbitrary enforcement for engaging in these daily activities should their parole officers consider this conduct to be prohibited by the statute or choose to abusively enforce this condition at their expense.

2.  *The activities Plaintiffs seek to engage in wholly fall outside SARA's "core purpose."*

In addition to assessing whether a "statute provides []sufficient general guidance," courts must also evaluate whether the conduct at issue falls within the statute's "clear core." *Farrell*, 449 F.3d at 493. "[I]f a statute has a core meaning that can reasonably be understood," *Brache v. Westchester County*, 658 F.2d 47, 51 (2d Cir. 1981), the court's "inquiry will involve determining whether the conduct at issue falls so squarely in the core of what is prohibited by the law that there is no substantial concern about arbitrary enforcement because no reasonable enforcing officer could doubt the law's application in the circumstances," *Farrell*, 449 F.3d at 493.

Here, there is no genuine dispute of material fact that SARA's thousand-foot movement restriction seeks to curb movement that may threaten the safety of minors. *See* ECF No. 17, at 2 (SARA's purpose is to "protect[] minors from [people convicted of sexual offenses]"). Plaintiffs' desired activities— being present at church, visiting healthcare providers, entering a public park, and traveling on the bus and subway—do not fall "squarely" within SARA's core objectives. *Smith*, 415 U.S. at 578. In fact, this course of conduct stands in stark contrast to the "hard-core violat[ions]"— intentionally entering or remaining very close to a school to seek out unlawful interactions with minors—that this condition clearly proscribes. *Smith*, 415 U.S. at 578. As Plaintiffs' proposed activities involve practically unavoidable and fleeting proximity to school

grounds to meet life's demands, it cannot be said that no reasonable officer "could have doubted" that this conduct is unlawful. *Farrell*, 449 F.3d at 493. Indeed, the undisputed facts illustrate that M.G.'s and J.M.'s parole officers themselves are uncertain as to whether these actions are expressly prohibited by SARA's thousand-foot movement restriction.

In sum, as the plain text of SARA's thousand-foot movement restriction is undeniably vague and Defendants have not provided sufficiently clear standards regarding its interpretation or enforcement, J.M. and M.G. are vulnerable to arbitrary enforcement for engaging in activities entirely outside the scope of this statute's intended purpose.

\* \* \*

Accordingly, Plaintiffs will move for summary judgment in their favor and ask the Court to order the aforementioned briefing schedule.

Sincerely,

By: */Daniel Lambright*
Daniel R. Lambright
Claire Molholm
Molly K. Biklen
New York Civil Liberties Union
    Foundation
125 Broad Street, 19th Floor
New York, N.Y. 10004
(212) 607-3300
dlambright@nyclu.org

*Attorneys for Plaintiffs*

6